# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MARISOL ROMO,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No.  1:25-cv-00147-SAB

ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

(ECF Nos. 13, 14)

Plaintiff Marisol Romo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his analysis of Plaintiff's severe impairments and Plaintiff's subjective testimony.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

/ / /

/ / /

1

# I.

# BACKGROUND

## A.    Procedural History

On April 12, 2021, Plaintiff protectively field an application for supplemental security income, alleging disability beginning January 3, 2020.  (ECF No. 10, Administrative Record ("AR"), 21.)  Plaintiff's application was initially denied on October 5, 2021, and denied upon reconsideration on March 28, 2022.  (Id.)  Plaintiff requested a hearing before an ALJ.  On April 20, 2023, Plaintiff, represented by counsel, appeared via telephone for a hearing in front of an ALJ.  (Id.)  Plaintiff and vocation expert ("VE") David M. Dettmer testified.  (Id.)  On January 8, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled.  (AR 34.)  On September 23, 2024, the Appeals Council denied Plaintiff's request for review.  (AR 5-9.)

## B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 12, 2021, the application date.  (AR. 24.)  The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; arthritis; obesity; hearing loss; asthma; borderline intellectual functioning; depression; and anxiety.  (Id.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 25.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except she is frequently able to climb ramps and stairs, but is never able to climb ladders, ropes, and scaffolds. She could frequently kneel and occasionally balance, crawl, crouch, and stoop.  Plaintiff should not work in environments subjecting her to concentrated exposure to respiratory irritants such as gases, dust, smoke and/or fumes and she should not work in environments exposing her to unprotected heights or machinery with dangerous, moving mechanical parts or which would subject her to more than moderate levels of background noise.  Plaintiff could perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks.  In addition,

she should not work in environments subjecting her to more than moderate levels of background noise. (AR 28.)

The ALJ then found that Plaintiff was unable to perform any past relevant work, she was 47 years old on the application date, and she had at least a high school education. (AR 32-33.) The ALJ discussed that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not she has transferable job skills. (AR 33.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, since April 12, 2024, the date the application was filed. (AR 34.)

Plaintiff sought timely review of the Commissioner's final decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 8, 9.) Thereafter, the parties filed their briefs on the matter.[1] (ECF Nos. 13, 14.)

## II.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of her position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[2]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3]  "[I]t is the responsibility of the ALJ, not the

___

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.

claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

### B.   Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of

---

1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ erred in his consideration of Plaintiff's anemia, finding that it was not a severe impairment at Step Two. (ECF No. 13, pp. 5-8.) Second, Plaintiff generally argues that the ALJ erred in his analysis of Plaintiff's subjective complaints. (Id. at pp. 8-9.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 14.) The Court agrees with the Commissioner.

### A.    Severe Impairment Analysis at Step Two

At Step Two of the sequential evaluation, the ALJ determines whether a claimant has a medically "severe" impairment or combination of impairments. See 20 C.F.R. §§ 404.1520(a)(4)

(ii); 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996, citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).  An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Glanden v. Kijakazi, 86 F.4th 838, 844 (9th Cir. 2023), quoting Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original), quoting Smolen, 80 F.3d at 1290.  The Ninth Circuit has observed that the Commissioner's policy statement reads that "[i]f an adjudicator [*i.e.*, an ALJ] is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  Id. at 687, quoting Titles II & XVI: Med. Impairments That Are Not Severe, SSR 85-28 (S.S.A. 1985) ("SSR 85-28").  Step Two, then, is "a de minimis screening device [used] to dispose of groundless claims," Smolen, 80 F.3d at 1290, and "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687, quoting SSR 85-28.  Therefore, on judicial review, courts must determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Gladen, 86 F.4th at 844, quoting Webb, 433 F.3d at 687.

At Step Two, and as relevant here, the ALJ found that Plaintiff's anemia did not cause more than a minimal limitation in her ability to perform basic work activates, and therefore, her anemia was not severe.  (AR 24.)  The ALJ acknowledged that Plaintiff reported experiencing some fatigue with weakness, and physicians diagnosed Plaintiff with anemia.  (Id.)  Despite not finding that Plaintiff's anemia was a severe impairment, the ALJ nonetheless found that Plaintiff did have the following severe impairments: degenerative disc disease of the lumbar spine; arthritis; obesity; hearing loss; asthma; borderline intellectual functioning; depression; and anxiety.  (AR 24.)  Moreover, the ALJ clarified that "I considered all the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."  (AR 25.)

Though the Court tends to agree with Plaintiff insofar as that the ALJ did not give much analysis with regard to Plaintiff's anemia, the Court also agrees with the Commissioner's opening argument that any error here was harmless. In particular, the ALJ found that Plaintiff had eight other severe impairments, meaning that the sequential evaluation continued; indeed, the ALJ continued through Step Five. In addition, the ALJ also highlighted that he considered Plaintiff's anemia when calculating the RFC. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Hickman v. Commissioner Social Sec. Admin., 399 Fed. App'x 300, 302 (9th Cir. 2010) (mem) ("The ALJ found [the plaintiff] suffered from other severe impairments and, thus, step two was already resolved in [the plaintiff's] favor.").

Plaintiff does not otherwise articulate how any error by the ALJ was harmful, nor can the Court discern one—especially, given the Court's discussion of the ALJ's analysis of Plaintiff's testimony below. Therefore, the Court finds that any error that occurred at Step Two was harmless. See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).

Plaintiff has not demonstrated reversable error at Step Two.

**B.    Analysis of Plaintiff's Subjective Complaints**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence,

without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

In addition, an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid," and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). Furthermore, an ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id., citing Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1225 (9th Cir. 2010).

In the decision, the ALJ discussed Plaintiff's testimony at length, including separate analyses for Plaintiff physical and mental impairments. The Court begins by quoting the ALJ's discussion of Plaintiff's physical impairments:

The claimant was measured as 64 inches tall and 270 pounds (see Exhibit C1F, p. 3) with a bod mass index (BMI) over 40 (see Exhibit C1F, pp. 3, 5) and physicians assessed her as obese (see Exhibits C2F, pp. 10-12; C4F, pp. 92, 117; C5F, p. 4; C9F, p. 186). She further reported having some impaired hearing (see Exhibits C4F, p. 164; C5F, p. 20), including having difficulty carrying on with a normal conversation in a room with a lot of background noise (see Exhibit C9F, p. 55). However, she can communicate effectively, as evidenced by her ability to communicate with consultative examiners (see Exhibits C6F-C7F) and by her participation during the hearing. The claimant reported experiencing some wheezing (see Exhibit C5F, p. 48) with shortness of breath and physicians diagnosed asthma (see Exhibit C5F, p. 48). She reported taking medication, including Albuterol for the condition (see Exhibit C14E, p. 1) and examination showed the lungs were clear to auscultation with non-labored respirations, equal breath sounds, and symmetrical chest wall expansion (see Exhibits C4F, p. 87; C5F, p. 13; C9F, p. 25). In addition, she exhibited a normal respiratory effort with no wheezes, crackles, or rubs (Exhibit C2F, p. 12).

The claimant reported experiencing low back pain with numbness and tingling to the lower extremities (see Exhibits C1F, p. 3; C4F, pp. 5, 30; C5F, p. 7) and there is evidence of degenerative disc disease (see Exhibit C1A). Examinations revealed tenderness to palpitation in the lower back with a reduced range of motion (see Exhibits C4F, pp. 20, 35; C5F, pp. 13, 30; C9F, pp. 25, 53) and she underwent bilateral lumbar facet joint steroid injection (Exhibit C1F, p. 5). However, in March 2022, a straight leg raise test was negative in the seated position and she was easily able to bend at the waist to take off her shoes and socks and put them back on (Exhibit C7F, pp. 3-6). She further reported experiencing knee pain and indicated she has osteoarthritis (see Exhibit C7F, p. 6), but an examination of the musculoskeletal system showed a normal range of motion with normal strength and tone and no edema, cyanosis, digital clubbing, or discoloration in the extremities (Exhibit C2F, p. 12). She also exhibited a normal gait and station (see Exhibit C7F, p. 5), physicians encouraged her to exercise (see Exhibit C9F, p. 100) and a report from February of 2023 indicates she walks and works all day long (see Exhibit C9F, p. 185).

(AR 28-29.)

The Court finds that the ALJ adequately identified Plaintiff's testimony and used gave clear and convincing reasons for discounting portions thereof. For example, the ALJ identified that Plaintiff reported problems with hearing loss, but the ALJ discounted this testimony based on ordinary techniques of credibility evaluation—*i.e.*, the ALJ observed her ability to communicate at the hearing—as well as noting that Plaintiff was able to communicate with the consultative examiners. Though Plaintiff complained of wheezing and shortness of breath, the ALJ observed

10

that she had been placed on medication and that an "examination showed the lungs were clear to auscultation with non-labored respirations, equal breath sounds, and symmetrical chest wall expansion," in addition to having normal respiratory effort in another record. (AR 29.) And while the ALJ gave some credence to Plaintiff's low back pain testimony, the ALJ gave many examples of examinations or other records that gave a fuller picture to Plaintiff's limitations.

For Plaintiff's mental impairments, the Court again quotes the ALJ's analysis of Plaintiff's testimony:

> The claimant reported experiencing feelings of sadness and anxiousness with panic attacks (see Exhibit C4F, p. 5) and clinicians diagnosed anxiety and depression (see Exhibits C4F, pp. 8, 12, 42; C9F, pp. 101, 160). She reported taking medication, including paroxetine for her conditions (see Exhibit C14E, p. 2) and she exercises to attempt to reduce anxiety and stress (see Exhibits C4F, pp. 37, 113; C5F, p. 92; C9F, p. 195). She further reported having difficulty functioning while on medication for anxiety (see Exhibit C9F, p. 195), but reports from primary care providers also showed she exhibited an appropriate mood (see Exhibit C2F, p. 12) and she was alert and interactive with a normal affect (see Exhibit C9F, p. 186). The claimant previously underwent intelligence testing with results that placed her in the borderline range of functioning (see Exhibit C1A), but a subsequent examination of no evidence of a formal thought disorder and she also graduated from high school and worked for 16 years as a preschool teacher (see Exhibit C6F, pp. 2-4). In addition, there is little to no evidence of continuing psychiatric treatment or counseling and during a consultative examination, she was able to follow a three-step command and could recall five digits forward and backward (Exhibit C6F, p. 3).

(AR 30-31.)

The Court likewise finds that the ALJ's discussion of Plaintiff's testimony regarding her mental impairments was sufficient. The ALJ first discussed Plaintiff's difficulty on medication, which the ALJ found were undercut by reports from her primary care doctor reporting she had appropriate mood, she was alert, and she had normal affect.[4] Though Plaintiff tested previously as borderline range for functioning with regard to intelligence testing, a subsequent examination found no evidence of a formal thought disorder. Moreover, the ALJ observed that Plaintiff

---

[4] The Court finds that this discussion by the ALJ sufficiently addresses Plaintiff's concern that she testified that at times her medication made her drowsy. (AR 13, p. 7, citing AR 115, 120-21.)

graduated high school and worked for 16 years as a preschool 'teacher assistant.'[5]  Finally, the ALJ noted that there was a lack of psychiatric treatment or counseling.

Following a discussion of the medical opinions in the record, the ALJ found that though Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 32.)

Furthermore,

> In this case, the claimant's statements and allegations are not fully consistent with the medical and other evidence.  For example, she alleged her ability to bend is "affected" (see Exhibit C6E, p. 8), but that is inconsistent with Dr. Wagner's examination findings, which showed she was easily able to bend at the waist to take off her shoes and socks and put them back on (see Exhibit C7F, pp. 3-6).  The claimant further alleged her ability to talk is "affected" (see Exhibit C6E, p. 8), but that is inconsistent with Dr. Dixit's report, which showed her speech was clear, coherent, spontaneous and 100% intelligible with no articulation errors (see Exhibit C6F, p. 3).  Overall, the claimant alleges suffering from significant limitations, which prohibit her from working (see Exhibits C2E, p. 2; C6E; hearing testimony), but that is inconsistent with her report to Dr. Wagner that she cooks, cleans, drives, shops, performed her own activities of daily living without assistance and walks for some exercise (see Exhibit C7F, p. 3). An alleged inability to work is also inconsistent with the prior administrative medical findings of Drs. De Souza (see Exhibit C2A) and Gross (see Exhibit C4A).

(Id.)

Thus, in addition to the ALJ's discussions above, the ALJ gave further reasons here for discounting portions of Plaintiff's testimony as it related to her ability to bend, ability to talk, significant limitations contrasted with Plaintiff's activities of daily living, and the prior administrative medical findings, which the ALJ found were persuasive.

In light of the foregoing, Plaintiff's general argument that the ALJ did not sufficiently give clear and convincing reasons for discounting Plaintiff's testimony is unpersuasive.  Additionally, the Court notes that Plaintiff's formulation of what the law requires in this area of Social Security

---

[5] The Court notes that the ALJ characterized Plaintiff in this section as working as a "preschool teacher."  (Compare AR 31 with AR 100.)  That said, the Court discerns no error in the ALJ's this characterization here, given that the ALJ recognized that Plaintiff testified as being a teacher's assistant later in his opinion.  (AR 32.)

appears to be in incongruent with Smartt v. Kijakazi, the Ninth Circuit's recent opinion discussing the standard of review regarding an ALJ's analysis of a claimant's testimony. See 53 F.4th 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original).

The Court finds that the ALJ's rationale is clear enough that it has the power to convince. Smartt, 53 F.4th at 499. Accordingly, the ALJ did not err.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Marisol Romo. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **March 2, 2026**

STANLEY A. BOONE
United States Magistrate Judge

13